Michael E. Piston
Attorney for the Plaintiffs
38-08 Union St., Suite 9A
Flushing, NY 11354
Phone: 646-876-3772
Fax: 206-770-6350
Email: michaelpiston4@gmail.com

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IDEANOMICS INC., and MATTHEW FOGEL | Case No.: |
| Plaintiffs, | COMPLAINT |
| against | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES | |
| Defendant | |

## INTRODUCTION

1. The plaintiffs have brought this action to hold unlawful and set aside the United States Citizenship and Immigration Services' Decision of July 3, 2023, ECF No. 1-1, to deny IDEANOMICS INC.'s Form I-140, Petition for Immigrant Worker, upon behalf of MATTHEW FOGEL, on the grounds that the Decision was arbitrary and capricious, and not in accordance with law.

## THE PARTIES

COMPLAINT - 1

2. IDEANOMICS INC  is a publicly traded (NASDAQ: IDEX) global company residing in New York City, New York, State of New York, with operations in the U.S., China, Malaysia,  Italy, and the UK.  ECF No. 1-2 at 2.

3. MATTHEW FOGEL is a citizen and national of Canada, ECF No. 1-2 at 2, and a person with extraordinary ability in the field of Technology Product Innovation and Management. ECF No. 1-2 at 16. His "Alien Registration Number" is A232-546-242.

4. The United States Citizenship and Immigration Services (USCIS) is an agency within the Department of Homeland Security to whom the Secretary of Homeland Security has delegated authority to adjudicate petitions for immigrant workers. It resides in the state of Maryland and the District of Columbia.

JURISDICTION

5. This being an action arising under the Administrative Procedure Act, a law of the United States, original jurisdiction over this matter is conferred upon this Court by 28 U.S.C. § 1331.

VENUE

6. Inasmuch as  IDEANOMICS INC is a resident of the Southern  District of New York, venue is proper in this district. 28 U.S.C. § 1391(e)(1)(C)1.

STATEMENT OF RELEVANT LAW

---

[1] No real property is involved in this action.

COMPLAINT - 2

7.  5 U.S.C. § 706 provides in relevant part that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an <u>agency action</u>. The reviewing court shall—
> **(1)** compel <u>agency action</u> unlawfully withheld or unreasonably delayed; and
> **(2)** hold unlawful and set aside <u>agency action</u>, findings, and conclusions found to be—
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

8.  8 U.S.C. § 1153 (b) provides that:

> **PREFERENCE ALLOCATION FOR EMPLOYMENT-BASED IMMIGRANTS**
> Aliens subject to the worldwide level specified in section 1151(d) of this title for employment-based immigrants in a fiscal year shall be allotted visas as follows:
> **(1) PRIORITY WORKERS** Visas shall first be made available in a number not to exceed 28.6 percent of such worldwide level, plus any visas not required for the classes specified in paragraphs (4) and (5), to qualified immigrants who are <u>aliens</u> described in any of the following subparagraphs (A) through (C):
> **(A) Aliens with extraordinary ability** An <u>alien</u> is described in this subparagraph if—
> **(i)**    the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,
> **(ii)**   the alien seeks to enter the United States to continue work in the area of extraordinary ability, and
> **(iii)**  the alien's entry into the United States will substantially benefit prospectively the United States.

9.  8 C.F.R. § 204.5(h)(2) defines "extraordinary ability" as: A level of expertise indicating that the individual is one of that small percentage who has risen to the very top of the field of endeavor.

COMPLAINT - 3

10. Further, 8 C.F.R. § 204.5(h)(3) indicates that an individual can establish sustained national or international acclaim through evidence of a one-time achievement (that is, a major, internationally recognized award).

11. Barring the individual's receipt of such an award, the regulation outlines ten criteria, at least three of which must be satisfied for an individual to establish the sustained acclaim necessary to qualify as an individual with extraordinary ability. These criteria are:

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;
> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specialization for which classification is sought;
> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;
> (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;
> (vii) Evidence of the display of the alien's work in the field at artistic exhibitions or
> showcases;
> (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;
> (ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or
> (x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

12. Additionally, 8 C.F.R. § 204.5(h)(4) provides that "[i]f the above standards do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility."

13. If and only if the USCIS determines that the beneficiary has met three of these criteria does it go on to determine whether he has been the beneficiary of sustained national or international acclaim, is among the small percentage who have risen to the very top of his field and whether he is coming to the United States to work in this field. ECF No. 1-1 at 8.

14. If the beneficiary meets 3 of the criteria set forth in § 204.5(h)(3), plus all of the criteria set forth in the immediately preceding paragraph, then his petition shall be approved. 8 U.S.C. § 1154(b).

## STATEMENT OF RELEVANT FACTS

15. On April 28, 2023, Ideanomics filed a Form I-140 with the USCIS to classify Matthew Fogel in accordance with 8 U.S.C. § 1153(b)(1)(A) as an "alien with extraordinary ability". ECF No. 1-1 at 1.  The Form was assigned File No IOE8300298400.

16. In support of this petition, Ideanomics filed:

    a. Documentation of Mr. Fogel's membership in associations in the field for which classification was sought, which require outstanding achievements of their members, as judged by recognized national or international

COMPLAINT - 5

experts in their disciplines or fields in satisfaction of criterion (ii) of 8 C.F.R. § 204.5(h)(3);

    b.   Evidence of Mr. Fogel's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specialization for which classification was sought, in satisfaction of criterion (iv) of 8 C.F.R. § 204.5(h)(3);

    c.   Evidence that Mr. Fogel has performed in a leading or critical role for organizations or establishments that have a distinguished reputation, in satisfaction of criterion (viii) of 8 C.F.R. § 204.5(h)(3); and

    d.   Evidence that Mr. Fogel  has commanded a high salary or other significantly high remuneration for services, in relation to others in the field in satisfaction of criterion (ix) of 8 C.F.R. § 204.5(h)(3).

17. The documentation which Ideanomics submitted of Mr. Fogel's membership in associations in the field which require outstanding achievements of their members, ,as judged by recognized national or international experts in their disciplines or fields included letters stating that:

    a.   Mr. Fogel is a member of FounderFuel, which requires outstanding achievements of its members, as judged by recognized national or international experts in their  field. ECF No. 1-2 at 95;

COMPLAINT - 6

b.  Mr. Fogel is a member of Techstars, which requires outstanding achievements of its members, as judged by recognized national or international experts in their field. ECF No. 1-2 at 98;

c.  Mr. Fogel is a member of C100, which requires outstanding achievements of its members, as judged by recognized national or international experts in their field. ECF No. 1-2 at 100.

18. Ideanomics submitted the following evidence of Mr. Fogel's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought:

a.  A letter from FounderFuel stating that:

The FounderFuel Mentor group is a highly selective, invitation-only group of members composed of the very top technology entrepreneurs and executives. Mentors provide guidance to participant start-up companies and are the key component of FounderFuel's mission and excellent reputation. As such, we rigorously search for Mentor candidates and only accept those with outstanding achievements and recognition, as judged by our recognized national and international experts in their field.

Based on their performance, a subset of Mentors is asked to participate in judging panels whereby the companies participating in FounderFuel present their company and business pitch to the panel and receive feedback from the panel on their product, technology, and strategy, as well as how to improve their presentation. Additionally, the judging panel members provide a confidential scorecard to the FounderFuel management team wherein they judge each company's product, pitch, and business. These scores are used to determine which companies are permitted to present on- stage at FounderFuel Demo Day, an in-person event where an audience of over 1,000 investors and entrepreneurs watch the company pitches and can decide to invest in those companies.

A smaller subset of Mentors is invited to participate in FounderFuel's Selection Committee. This Selection Committee decides which applicant

technology start-up companies are invited to participate in the FounderFuel program, making it fundamental to the association, as FounderFuel could not exist without its member companies. Following a series of group interviews with the applicants, the Selection Committee judges each company's product, technology, strategy, and business to select the top companies to participate in our program.

Mr. Fogel is one of the very few members to have participated in all three capacities. *Id.* at 96.

b. A letter from Techstars stating that:

Techstars is an internationally recognized technology innovation and entrepreneurship association which operates a technology startup accelerator program, selecting entrepreneurial technology companies to participate and gain investment and mentorship as part of the program. …

Mr. Fogel was part of an exclusive group of Mentors sought out by the Techstars Montreal Al management team to provide advice, opinions, and judgments on the top 20 applicants to the program, and these judgments were utilized by the management team to select the top 10 entrepreneurial technology companies to invite for participation in the program.

Id. at 98.

19. Ideanomics submitted evidence  that it  is  an organization that has a distinguished reputation, both in the U.S. and the world, including that

a. "ldeanomics' subsidiary, Energica Motor Company is widely considered a global electric motorcycle leader, as the company's electric motorcycles are the world's best in nearly every category, including power, torque, high speed range,  and charging time, and has won many awards,  including Motorcycle of the Year and Electric Bike of the Year." Id. at 17.

b. Ideanomics' subsidiary Solectrac was the first electric tractor manufacturer to market in North America and the world. Id;

COMPLAINT - 8

c.  Ideanomics' subsidiary WAVE is the market leader wireless electric

vehicle charging, and is being used by public transit authorities across the

U.S., including Universal Studios Hollywood and the Port of Los Angeles.

*Id.* at 17 & 91.

d.  Ideanomics' subsidiary US Hybrid is a leading technology innovator

powering electric, hybrid, and fuel cell  medium- and heavy-duty

municipality vehicles, commercial trucks, buses, and specialty vehicles,

with clients including Ford Motor  Company, Caterpillar Inc., Textron,

and Toyota. *Id.* at 17-18.

e.  Ideanomics' subsidiary VIA Motors produced the world's first high

performance electric concept truck, the world's first full-size electric 4WD

luxury SUV, and the world's first extended range electric (eREV) cargo

van, and is currently building modular commercial electric vehicle

platforms under the leadership of automotive industry legends Bob Lutz

(former senior executive at GM,  Chrysler, Ford, BMW) and Bob  Purcell

(former senior GM executive, led  creation of GM  EV-1, world's first

modern electric car). *Id.* at 18.

f.   By combining all of these divisions, Ideanomics is the first and only

company to create a complete fleet electrification solution that includes

planning the solution; proprietary charging technologies including

market-leading wireless electric vehicle charging technology; proprietary

COMPLAINT - 9

vehicle types including electric trucks, tractors, and motorcycles; vehicle conversion products to convert non-electric vehicles to electric vehicles; and advanced software to manage fleet vehicles, charging operations, and energy usage. *Id.*

20. Ideanomics also submitted evidence that Mr. Fogel is employed by it in a critical role, including that:

    a. As the Sr. Vice President of Strategy, Mr. Fogel leads Ideanomics' technology product management, which includes oversight in innovative technology investment and M&A strategy and development, including analyzing each target company's technology and its alignment with Ideanomics' strategy." *Id.*

    b. Under Mr. Fogel's leadership, Ideanomics assembled its current innovative and market leading divisions and is combining them to create a unique offering to accelerate fleet electrification, and given that many of the businesses were immature and entrepreneurial endeavors, Mr. Fogel's new technology product strategy, development, and management experience has been critical for the process.' Mr. Fogel continues to work with the acquired businesses and divisional leaders to ensure compliance with company strategy, define operational plans, and drive product development. Id.

COMPLAINT - 10

c. Moreover, Mr. Fogel is utilizing his extensive background in innovative software and artificial intelligence product strategy, development, and management, he is playing a critical and leading role in the development of a new Ideanomics software platform that will allow customers to manage vehicles, charging, and energy. Me. Fogel is focused on ensuring the platform can make use of artificial intelligence technologies and allow for central management of these assets, which is a crucial component for the company's continued market leadership position." Id.

d. Ideanomics is an organization that is built upon M&As, and Mr. Fogel leads this most core part of Ideanomics which forms the basis and identity of the organization. Mr. Fogel's role includes defining the M&A strategy, developing and managing the M&A process, and integrating the acquired entities. Id. at 87.

e. As part of its company strategy, Ideanomics made strategic investments and acquisitions in a number of innovative electric vehicle technology companies, each an entrepreneurial startup, and aside from Mr. Fogel's pivotal role in defining the strategy that led to the acquisition of these companies, he develops and manages processes to ensure strategic and operational alignment between

COMPLAINT - 11

Ideanomics and its new subsidiaries, as well as collaboration among these subsidiaries. Id.

f. Each of the technology companies Ideanomics acquired had its own management team that was accustomed to operating as an independent business. Mr. Fogel has utilized his experience as an entrepreneur, manager, and mentor to build a relationship of trust and confidence with each subsidiary's management team, and his background in technology product innovation, strategy, and development to build confident relationships with the technology teams at each subsidiary…. Mr. Fogel has become one of the most widely respected experts within the entire Ideanomics team. Id. at 87-88.

g. Alongside Ideanomics CEO, Alf Poor, Mr. Fogel conceptualized the acquisition strategy and communication of the strategy to the investment market to ensure continued investor support. He was an instrumental member of the team that identified potential targets aligned with our vision and also foresaw how these start-ups could synergistically coalesce into Ideanomics's existing structure, thereby elevating its business proposition. ECF No. 1-4 at 16.

h. Mr. Fogel's incisive acumen allowed him to convincingly articulate Ideanomics long- term goals to the board of directors and investor

COMPLAINT - 12

community, thereby securing continued support to advance this strategic approach. Id.

    i. Mr. Fogel's leading role in designing and executing the annual planning process, which has directly enabled the company to exceed $100 million in revenue in 2022, with some entities experiencing more than 300% year-over-year increases in sales, by facilitating optimal performance across the board. Id.

    j. Moreover, Mr. Fogel played and leading and critical role in the noted development of the Ideanomics' software platform, architecting the operational efficiency program, and leading the strategic alignment of internal executive communications. Id. at 17.

    k. Without Mr. Fogel's foresight and strategic ingenuity, Ideanomics as it is known today wouldn't exist. Id at 16.

21. Ideanomics submitted the following evidence that Mr. Fogel has commanded a high salary or other significantly high remuneration for services, in relation to others in the field, inasmuch as in 2022, Mr. Fogel commanded a high remuneration of $380,863 from his employment in his field, which is significantly higher than that of his nationwide peers in the top 10% of the field. *Id.* at 11, 22-24.

22. On May 5, 2023 the USCIS issued a Request for Evidence to Ideanomics which it responded to on approximately June 28 of that year. ECF No. 1-3.

COMPLAINT - 13

23. In that response Ideanomics demonstrated that it had established that Mr. Fogel satisfied the criteria at 8 CFR 204.5(h)(3)(ii), (iii), (vii) and (viii).

24. Nevertheless, on July 3, 2023, the USCIS issued a decision denying Ideanomics' petition.

25. The Decision found that Ideanomics did not provide documentation of Mr. Fogel's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields, because the letters submitted as evidence of Mr. Fogel's membership in these association and their requirements for membership "are not sufficient evidence " and that "simply going on record without supporting substantive evidence support assertions is not sufficient to meet the burden of proof in these proceedings", citing Matter of Treasure Craft of California, 14 I&N Dec. 190 (BIA 1972). ECF No. 1-1 at 3.

26. Further, the USCIS found that Ideanomics did not provide evidence of Mr. Fogel's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specialization for which classification is sought, because:

   a) **although** Ideanomics provided evidence such as letters from Bruno Morency, Sylvain Carle, Kyle Boulay, Jon Stokes, KJ Singh, and Ray Newal; however, the letters arc not sufficient evidence to demonstrate

COMPLAINT - 14

that Mr. Fogel participated either individually or on a panel, as a judge of the work of others in the same or an allied field of endeavor. *Id.* at 4-5.

b) the evidence does not demonstrate "how the beneficiary as a judge (sic), and at what level, such as independent and objective documentation about the event or occasion where you served as judge, the work that you judged, the level of the participants, how you were selected as an official judge, and evidence conveying when your judging occurred." *Id.* at 5.

c) "The letters indicate that you were/are a mentor. However, according to the Cambridge Dictionary, found at https://dictionary.cambridge.org/us/dictionary/english/mentor, the definition of a mentor is: A person who gives a younger or less experience person helps and advice over a period of time, especially at work or school, Whereas the phrase "a judge" implies a formal designation in a judging capacity, either individually or on a panel, as specified pursuant to the regulation at 8 C.F.R. § 204.5(h)(3 )(iv) to be a mentor is a separate and distinct title from a judge. As such, the evidence relating to you being a mentor holds no evidentiary value in the present proceedings." *Id.*

d) "The additional evidence which Ideanomics filed in response to the Request for Evidence is not sufficient because the assertions of counsel do not constitute evidence and while Ideanomics submitted a rating document ("Rate below criteria on 1-3 scale. 3 for high perception which

COMPLAINT - 15

features the name "Matt", it does not feature the beneficiary's full name.")
*Id.*

e) "Furthermore, there is no context to the document submitted. The document does not demonstrate that the beneficiary actually participated either individually or on a panel, as a judge of the work of others  (Senior Vice President, Strategy) in the same field of Technology or an allied field of endeavor." *Id.*

f) "In addition, Ideanomics did not provide documentation that would be helpful to assist to USCIS in determining whether the beneficiary served as a judge, and at what level, such as independent and objective documentation about the event or occasion where you served as judge, the work that the beneficiary judged, the level of the participants, how the beneficiary was selected as an official judge, and evidence *conveying*  when Mr. Fogel's judging occurred." *Id.*

27. The Decision finally found that Ideanomics had failed to provide evidence that <u>Mr. Fogel</u> has performed in a leading or critical role for organizations or establishments that have a distinguished reputation because

a. Ideanomics provided a letter from Robin Mackie, its Chief Operating Officer ;however, the letter (supposedly) does not explain how Mr. Fogel performs in a leading or critical role for ldeanomics. *Id.* at 6.

COMPLAINT - 16

    b.  "The record does not establish that your current employer Ideanomics has a distinguished reputation. For example, the web printout from the  New Stack, sdtimes.com, VentureBeat, et al. do not establish  that the organization  has received media coverage at a level illustrating its eminence, distinction, or excellence, which can confirm its distinguished reputation. *See USCIS Policy Memorandum PM* 602-0005.1, supra, 10-11 (providing Webster's online dictionary's definition of 'distinguished)." *Id.*

    *c.*  The regulations required that Mr. Fogel have played a leading or critical role for more than one organization. *Id.*

28. Finally, the Decision further that Ideanomics did not provide evidence that the Mr. Fogel has commanded a high salary or other significantly high remuneration for services, in relation to others in the field because

    a.  "The evidence does not directly compare the beneficiary's remuneration to those in your specific position of Senior Vice President, Strategy in the field of Technology." *Id.* at 7.

    b.  "the data is insufficient to establish 'significantly high remuneration' in Mr. Fogel's occupation. The plain language of the regulation at 8 C.F.R. § 204.5(h)(3)(ix) requires you to submit evidence of a 'high salary or other significantly high remuneration for services, in relation to others in the field.' You attempt to use average, local or national salary levels that do

COMPLAINT - 17

not allow for an appropriate basis for comparison in determining a high salary "in relation to others in the field." *Id*. at 8.

c. "The fields listed for categories are for general fields without providing the remuneration for specific positions based on seniority, years of experience, career level, or hierarchical position within an organization." *Id*. And

d. "You must submit documentary evidence of the earnings of those in the beneficiary's occupation performing similar work at the top level of the field". *Id*. at 7.

e. Since the USCIS concluded that Ideanomics had not established by a preponderance of the evidence that Mr. Fogel met at least three of the antecedent evidentiary prongs, it did not find him to be an individual of extraordinary ability. *Id*. at 8.

29. The action ensued.

## CAUSES OF ACTION

I.  The Decision's finding that Mr. Fogel was not an individual with extraordinary ability because Ideanomics did not establish by a preponderance of the evidence that he met at least three of the antecedent evidentiary prongs was arbitrary and capricious and/or not in accordance with law.

A.  USCIS's finding that Ideanomics failed to provide documentation of Mr. Fogel's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields was arbitrary and capricious because its explanation for its decision runs counter to the evidence before the agency, is not in accordance with law and ignored contradictory evidence, and is not in accordance with law

COMPLAINT - 18

inasmuch as it is contradicted by the very caselaw upon which it purported to rely.

30. The record shows that Ideanomics did provide letters documenting Mr. Fogel's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields. ECF 1-2 at 95, 98 & 100.

31. Letters are documentation. See, e.g., United States v. Rosenstein, 474 F.2d 705, 710 (2d Cir. 1973) ("Some of the Liechtenstein documents were letters from third parties").

32. Accordingly, the USCIS's failure to credit Ideanomics for satisfying this criterion was arbitrary and capricious in that it ran counter to the evidence in the record.

33. Further the USCIS's finding that Ideanomics did not establish that it satisfied this evidentiary prong because the letters submitted as evidence of Mr. Fogel's membership in these association and their requirements for membership "are not sufficient evidence " was arbitrary and capricious.

34. A mere statement that something is insufficient does not meet the APA standard because, like a statement that something is not "adequately supported', "it is not a statement of reasoning, but of conclusion. It does not 'articulate a satisfactory explanation' for the agency's action, State Farm, 463 U.S. at 43, because it does not explain 'why" the agency regarded the letter insufficient." Tourus Records, Inc. v. DEA, 259 F.3d 731, 737 D.C. Cir.2001) quoting Henry J.

COMPLAINT - 19

Friendly, Chenery Revisited: Reflections on Reversal and Remand of

Administrative Orders, 1969 DUKE L.J. 199, 222.

35. Furthermore, the USCIS's holding  that "Simply going on record without

supporting substantive evidence to support assertions, is not sufficient to meet

the burden of proof in these proceedings.", citing Matter of Treasure Craft of

California, 14 I&N  Dec.  190 (BIA  1972)" was not in accordance to law

inasmuch as not only did Treaure Craft say no such thing, but in fact it held just

the opposite, that witness statements, even from the petitioner itself, must be

give "due consideration", unless contradicted by other evidence in the record, id.,

at 194,  which USCIS makes no claim Ideanomics' letters were here.

36. What is more, the failure to consider these letters was arbitrary and capricious

because by doing so the Decision ignored evidence contradicting its position. See,

e.g., Genuine Parts Co. v. EPA, 890 F.3d 304, 312 (D.C. Cir. 2018) ("[A]n agency

cannot ignore evidence contradicting its position." (quoting Butte Cty. v. Hogen,

613 F.3d 190, 194, 392 U.S. App. D.C. 25 (D.C. Cir. 2010)) and Stellar IT Sols.,

Inc. v. United States Citizenship & Immigration Servs., Civil Action No. 18-2015

(RC), 2018 U.S. Dist. LEXIS 196284, at *23 (D.D.C. Nov. 19, 2018)

37. Finally,  the Decision is also not in accordance with law inasmuch as  the

regulation does not require that Ideanomics submit "substantive evidence" in

support of its claim, but only "documentation", which it did.

COMPLAINT - 20

38. Accordingly, the Decision's finding that Ideanomics failed to provide documentation of Mr. Fogel's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields decision was arbitrary and capricious and not in accordance with law.

B. The Decision's finding that Ideanomics failed to submit evidence of Mr. Fogel's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought, was arbitrary and capricious in that it ran contrary to the evidence in the record, added additional requirements not contained in the regulation and failed to provide a rational connection between the facts and the judgment, and was not in accordance with law in that it was premised upon Ideanomics' failure to submit additional probative evidence beyond that required by the regulation.

39. Ideanomics submitted letters showing that Mr. Fogel has participated on panels as a judge of the work of others in the same or an allied field of specialization.

40. In particular, a letter from FounderFuel showed Mr. Fogel participated in its Selection Committee, an exclusive judging panel that interviews and judges technology entrepreneurs seeking to participate in the FounderFuel program. The Selection Committee reviews and judges candidates on a number of dimensions, including the company's "product, technology, strategy and business to select the top companies to participate in our program." ECF No. 1-2 at 96.

COMPLAINT - 21

41. Product, technology, strategy and business are each fields allied to Technology Product Innovation and Management.

42. Further, a letter from Techstars, "an internationally recognized technology innovation and entrepreneurship association which operates a technology startup accelerator program, selecting entrepreneurial technology companies to participate and gain investment and mentorship as part of the program (showed that) Mr. Fogel was part of an exclusive group of Mentors sought out by the Techstars Montreal AI management team to provide advice, opinions, and judgments on the top 20 applicants to the program, and these judgments were utilized by the management team to select the top 10 entrepreneurial technology companies to invite for participation in the program." Id.

43. "Technology innovation and entrepreneurship" is virtually indistinguishable from "Technology Product Innovation and Management" or, at the very least, a closely allied field.

44. Although the USCIS asserted that "The petitioner provided evidence such as letters from Bruno Morency, Sylvain Carle, Kyle Boulay, Jon Stokes, KJ Singh, and Ray Newal; however, the letters are not sufficient evidence to demonstrate that the beneficiary participated either individually or on a panel, as a judge of the work of others in the same or an allied field of endeavor" a mere statement that something is insufficient does not meet the APA standard because, like a statement that something is not "adequately supported' is not a statement of

COMPLAINT - 22

reasoning, but of conclusion. It does not 'articulate a satisfactory explanation' for the agency's action, State Farm, 463 U.S. at 43, because it does not explain 'why" the agency regarded the letter insufficient. Tourus Records, 259 F.3d at 737.

45.  The Decision goes on to complain that "the evidence does not demonstrate how the beneficiary as a judge (sic) and at what level, such as independent and objective documentation about the event or occasion where you served as judge, the work that you judged, the level of the participants, how you were selected as an official judge, and evidence conveying when your judging occurred." ECF No. 1-1 at 5.

46. However, the regulations do not require any such documentation so long as the petitioner presents evidence that the beneficiary acted as judge, which its letters are.

47. Agency action is arbitrary and capricious if it informally imposes a requirement not previously made a part of its regulations, Maximum Home Health Care, Inc. v. Shalala, 272 F.3d 318, 319 (6th Cir. 2001).

48.  Further, the mere fact that Ideanomics might have submitted additional probative evidence in support of its petition is not a basis for denial when the evidence submitted satisfies the pertinent regulatory requirement. See Matter of Chawathe , 25 I. & N. Dec. 369, 375 (B.I.A. October 20, 2010) ("Although the applicant could have submitted more probative evidence to establish that SAT is a subsidiary of ChevronTexaco, such as direct evidence of the ownership of SAT

COMPLAINT - 23

stock, the AAO finds that the SEC Form 10-K and the letter written by his

employer are sufficient to establish by a preponderance of evidence that SAT is a

wholly owned subsidiary of ChevronTexaco.").

49. Finally, the agency provides no rational connection between the fact that Mr.

Fogel held the title of mentor and its conclusion that he did not act as judge

when he served as a judge.

50. In particular, the Decision failed to articulate any logical reason why a person

cannot be both a mentor and a judge, and none are apparent.

51. In fact, judge do sometimes act as mentors.

52. For example:

> In 2009, the Massachusetts Supreme Judicial Court applied for and received
> a technical assistance grant from the State Justice Institute (SJI). The grant
> was intended to be a proof of concept grant to assess the extension of "focused
> mentoring and coaching" into the judicial branch in Massachusetts where
> judges are appointed for life. In the grant, the Supreme Judicial Court sought
> education, skill building and ongoing support for judges asked to serve as
> "focused mentors" assigned to work with judges in need of assistance with
> specific issues.
> The initial group of focused mentors, a diverse group of 19 judges
> representing each of the seven trial courts, received three days of intensive
> mentor coach training in October of 2010. The training consisted of a
> combination of theory and practice based on the skills and principles of
> executive coaching.

Hon. Barbara J. Rouse (ret.) and Jan C. Bouch, Psy.D., PCC, "Coaching Better

Justice"  Coaching Better Justice - The National Judicial College (judges.org) (last

accessed November 11, 2023).

COMPLAINT - 24

53. Accordingly, the USCIS's finding that Ideanomics failed to submit evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought was arbitrary and capricious and not in accordance with law.

   C. The Decision's finding that Ideanomics had failed to provide evidence that the Mr. Fogel has performed in a leading or critical role for organizations or establishments that have a distinguished reputation was arbitrary and capricious as running counter to the evidence before, disregarding evidence contradicting its conclusion and not in accordance with law.

54. Ideanomics did in fact provide evidence that Mr. Fogel has performed in a leading or critical role for Ideanomics, to wit, the letters of Jennie Valdez, HR Manager, ECF No. 1-2 at 17-20, and Robin Mackie, Chief Operating Officer, id. at 87-88, so stating.

55. Letters are evidence. Muller v. Olin Mathieson Chem. Corp., 404 F.2d 501, 504 (2d Cir. 1968).

56. Further, The Decision's finding that the letter from Robin Mackie, Ideanomics Chief Operating Officer does not explain how Mr. Fogel performs in a leading or critical role for ldeanomics runs contrary to the evidence before the agency and disregards evidence contradicting its conclusions.

57. First, it disregards evidence contradicting its conclusions by disregarding the statement of Jennie Valdez, HR Manager that:

   a. As the Sr. Vice President of Strategy, Mr. Fogel leads Ideanomics' technology product management, which includes oversight in innovative

COMPLAINT - 25

technology investment and M&A strategy and development, including analyzing each target company's technology and its alignment with Ideanomics' strategy." ECF No. 1-2 at 18.

b. Under Mr. Fogel's leadership, Ideanomics assembled its current innovative and market leading divisions and is combining them to create a unique offering to accelerate fleet electrification, and given that many of the businesses were immature and entrepreneurial endeavors, Mr. Fogel's new technology product strategy, development, and management experience has been critical for the process.' *Id.*

c. Mr. Fogel continues to work with the acquired businesses and divisional leaders to ensure compliance with company strategy, define operational plans, and drive product development. *Id.*

d. Moreover, Mr. Fogel is utilizing his extensive background in innovative software and artificial intelligence product strategy, development, and management to play a critical and leading role in the development of a new Ideanomics software platform that will allow customers to manage vehicles, charging, and energy. *Id.*

e. Mr. Fogel is focused on ensuring the platform can make use of artificial intelligence technologies and allow for central management of these assets, which is a crucial component for the company's continued market leadership position. *Id.*

COMPLAINT - 26

58. Further, it runs counter to the evidence in the record in that Mr. Mackle's first letter did in itself explain how the beneficiary performs in a leading or critical role for Ideanomics, in that

a. "As part of our company strategy, we made strategic investments and acquisitions in a number of innovative electric vehicle technology companies, each an entrepreneurial startup, and aside from Mr. Fogel's pivotal role in defining the strategy that led to the acquisition of these companies, he develops and manages processes to ensure strategic and operational alignment between Ideanomics and its new subsidiaries, as well as collaboration among these subsidiaries. Each of the technology companies we acquired had its own management team that was accustomed to operating as an independent business. Mr. Fogel has utilized his experience as an entrepreneur, manager, and mentor to build a relationship of trust and confidence with each subsidiary's management team, and his background in technology product innovation, strategy, and development to build confident relationships with the technology teams at each subsidiary…. Mr. Fogel has become one of the most widely respected experts within the entire Ideanomics team." *Id.* at 87-88.

b. The letter also details Mr. Fogel's leading role in developing a critical new software platform that will be used by Ideanomics customers to manage their

electric vehicles, EV charging systems, and energy systems. Finally, Mr.

Mackie's second letter submitted in response to the RFE states that

> Alongside our CEO, Alf Poor, Mr. Fogel conceptualized the acquisition strategy and communication of the strategy to the investment market to ensure continued investor support. He was an instrumental member of the team that identified potential targets aligned with our vision and also foresaw how these start-ups could synergistically coalesce into Ideanomics's existing structure, thereby elevating our business proposition. Mr. Fogel's incisive acumen allowed him to convincingly articulate our long- term goals to the board of directors and investor community, thereby securing continued support to advance this strategic approach. Without Mr. Fogel's foresight and strategic ingenuity at this juncture, the Ideanomics we know today wouldn't exist.

> ECF No. 1-4 at 15-16.

    c.  Certainly Mr. Fogel must play a critical role in Ideanomics if it wouldn't

even exist in its current form without him.

59. The Decision's finding that Ideanomics failed to provide that Ideanomics was an

organization that has a distinguished reputation was arbitrary and capricious in

that it ran counter to evidence in the record and ignored evidence contradicting

its position, in that it ignored the evidence Ideanomics provided that

> Ideanomics is a world leader in the field of electric vehicles, including the areas of electric motorcycles, electric farming tractors, wireless charging, and fleet electrification. Ideanomics' subsidiary Energica Motor Company is widely considered a global electric motorcycle leader, as the company's electric motorcycles are the world's best in nearly every category, including power, torque, high speed range, and charging time, and has won many awards, including Motorcycle of the Year and Electric Bike of the Year. [3,4] Ideanomics' subsidiary Solectrac was the first electric tractor manufacturer to market in North America and the world. Ideanomics' subsidiary WAVE is the market leader in wireless electric vehicle charging, and is being used by public transit authorities across the U.S., including Universal Studios

COMPLAINT - 28

Hollywood and the Port of Los Angeles. Ideanomics' subsidiary US Hybrid is a leading technology innovator powering electric, hybrid, and fuel cell medium- and heavy-duty municipality vehicles, commercial trucks, buses, and specialty vehicles, with clients including Ford Motor Company, Caterpillar Inc., Textron, and Toyota. Ideanomics' subsidiary VIA Motors produced the world's first high performance electric concept truck, the world's first full-size electric 4WD luxury SUV, and the world's first extended range electric (eREV) cargo van, and is currently building modular commercial electric vehicle platforms under the leadership of automotive industry legends Bob Lutz (former senior executive at GM, Chrysler, Ford, BMW) and Bob Purcell (former senior GM executive, led creation of GM EV-1, world's first modern electric car).[8] By combining all of these divisions, Ideanomics is the first and only company to create a complete fleet electrification solution that includes planning the solution; proprietary charging technologies including market- leading wireless electric vehicle charging technology; proprietary vehicle types including electric trucks, tractors, and motorcycles; vehicle conversion products to convert non-electric vehicles to electric vehicles; and advanced software to manage fleet vehicles, charging operations, and energy usage. Therefore, it is evident that Ideanomics is an organization that has a distinguished reputation, both in the U.S. and the world.

ECF No. 1-2 at 17-18 (footnotes omitted).

60. Accordingly, The Decision's finding that Ideanomics had failed to provide Evidence that the Mr. Fogel has performed in a leading or critical role for organizations or establishments that have a distinguished reputation was arbitrary and capricious as running counter to the evidence before, disregarding evidence contradicting its conclusion and not in accordance with law.

    D.  The Decision's finding that Ideanomics did not provide evidence that Mr. Fogel has commanded a high salary or other significantly high remuneration for services, in relation to others in the field was arbitrary and capricious as running counter to the evidence in the record and/or fails to provide a rational connection between the judgment and the fact and informally imposes a requirement not previously made a part of its regulations and is not in accordance with law

COMPLAINT - 29

61. The first reason provided by the Decision for finding that Mr. Fogel did not meet the high salary criterion was that "The evidence does not directly compare the beneficiary's remuneration to those in your specific position of Senior Vice President, Strategy in the field of Technology." is arbitrary in it "failed to offer the rational connection between facts and judgment required to pass muster under the arbitrary-and-capricious standard," Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 56, (1983), and runs counter to the evidence in the record", id. at 43, inasmuch as the specific position which Mr. Fogel occupied was Senior Vice President, Strategy, and that is precisely the specific position to which Ideanomics compared his remuneration. ECF No. 1-4 at 11, 22-24.

62. The second reason, that "the data is insufficient to establish 'significantly high remuneration' in Mr. Fogel's occupation. The plain language of the regulation at 8 C.F.R. § 204.5(h)(3)(ix) requires you to submit evidence of a 'high salary or other significantly high remuneration for services, in relation to others in the field.' Your attempt to use average, local or national salary levels that do not allow for an appropriate basis for comparison in determining a high salary 'in relation to others in the field', ECF No. 1-1 at 7, is arbitrary as it runs counter to the evidence in the record and failed to offer the rational connection between facts and judgment required to pass muster under the arbitrary-and-capricious standard.

COMPLAINT - 30

63. It runs counter to the evidence in the record because Ideanomics did not compare

Mr. Fogel's compensation to the "average" salary levels, but rather the 90th (or

higher) percentile. ECF No. 1-4 at 11, 22-24.

64. Further, the claim that "local or national salary levels … do not allow for an

appropriate basis for  comparison", id., fails to provide a rational connection

between the facts and the judgment in that it offered no explanation of why

exactly Ideanomics was prohibited from using either local or national

remuneration data in showing that Mr. Fogel received "significantly high

remuneration", ECF No. 1-1 at 7, in relation to to comparably employed workers

either at a local or a national level, nor in fact what data source it should have

used for comparison, and why.

65. The third reason, that "The fields listed for categories are for general fields

without providing the remuneration for specific positions based on seniority,

years of experience, career level, or hierarchical position within an organization",

id., is not in accordance with law inasmuch as the regulation merely requires

that Ideanomics provide evidence that Mr. Fogel was paid more in his field, and

not more than those with a  certain amount of seniority, years of experience,

career level, or hierarchical position within an organization.

66.  Agency action is arbitrary and capricious if it informally imposes  a

requirement not previously made a part of its regulations, Maximum Home, 272

F.3d at 319.

COMPLAINT - 31

67. Finally, the fourth reason, that Ideanomics somehow had failed to "submit documentary evidence of the earnings of those in the beneficiary's occupation performing similar work at the top level of the field because this is where you claim the beneficiary to stand", ECF No. 1-1 at 7,   runs contrary to the evidence in the record  inasmuch as Ideanomics had in fact submitted evidence of the earnings of those in precisely the same occupation as Mr. Fogel, Senior Vice President, Strategy. ECF No. 1-4 at 11, 22-24.

68. Therefore, the Decision's finding  that Ideanomics did not provide evidence that Mr. Fogel has commanded a high salary or other significantly high remuneration for services, in relation to others in the field, was arbitrary and capricious and not in accordance with law. 5 U.S.C. § 706(2)(A).

WHEREFORE this Court should hold the USCIS's Decision unlawful and set it aside.

## II.    TO COMPEL THE USCIS TO RE-ADJUDICATE IDEANOMICS'S FORM I-140 FORTHWITH

69. The USCIS, by unlawfully denying Ideanomics' petition, has unreasonably delayed and/or unlawfully withheld a lawful decision in this matter.

WHEREFORE the Court should compel the USCIS to make a lawful decision on Ideanomics' Form I-140 upon behalf of Mr. Fogel forthwith following the Decision being set aside.

Respectfully Submitted this 4th day of December, 2023

/s/ *Michael E. Piston*
Michael E. Piston  (pro hac vice petition to be filed).
Attorney for the Plaintiff
38-08 Union St., Suite 9A
Flushing, NY 11354
Phone: 646-876-3772
Fax: 206-770-6350
Email: michaelpiston4@gmail.com

COMPLAINT - 33